UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANZ ANTHONY YUKIO BURGET,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C17-1836 BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS**

Plaintiff seeks review of the decision of the Administrative Law Judge ("ALJ") that his disability ended in March 2013, as also set forth in a prior final decision, due to medical improvement of his mental conditions, and that the record since that date does not now justify a finding of disability. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an immediate award of benefits.

## BACKGROUND

In 2014, plaintiff filed applications for Title II disability insurance and Title XVI supplemental security income, alleging disability beginning March 1, 2013. Previously, in 2013, an ALJ issued a partially favorable decision, determining that plaintiff had been disabled from August 1, 2008, through March 20, 2013, but that plaintiff was not disabled from March 21, 2013, through the date of decision, October 22, 2013. Tr. 124–139. Because that decision was

not appealed, its findings are administratively final. Nonetheless, in the current applications, plaintiff rebutted the *Chavez*[1] presumption of continuing non-disability by demonstrating a change of age category. Tr. 18. Plaintiff was 55 years old in October 2013 and is now 60 years old, a person of advanced age under the regulations. 20 C.F.R. § 404.1563.

After plaintiff's current applications were denied initially and on reconsideration, an ALJ held an August 2016 hearing, taking testimony from plaintiff, plaintiff's case manager Lisa Grillo, and a vocational expert. Tr. 79–119. In September 2016, the ALJ issued a decision. Tr. 18–28. Utilizing the five-step disability evaluation process,[2] the ALJ found at **step one** plaintiff had not engaged in substantial gainful activity since March 1, 2013; at **step two** plaintiff had the severe impairments of **major depressive disorder**, **PTSD versus anxiety disorder**, and **alcohol abuse in remission**; and at **step three** that plaintiff did not have an impairment that met or equaled the requirements of a listed impairment.[3] Tr. 21–22. The ALJ determined plaintiff had the **residual functional capacity ("RFC")** to perform a **full range of work at all exertional levels but with certain nonexertional limitations**: he is capable of simple routine tasks and familiar detailed tasks; he can have no interaction with the public; he can have occasional interaction with coworkers and supervisors, but only in small groups and can have no tandem work. Tr. 22–26. The ALJ found at **step four** that plaintiff is unable to perform any past relevant work; and at **step five** that because there are jobs that exist in significant numbers in the national

---

[1] *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] In the earlier 2013 decision, the ALJ determined at step three that plaintiff met the criteria for Listing 12.04 for depressive, bipolar, and related disorders from August 1, 2008, through March 20, 2013. Tr. 129–33.

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 2

economy that plaintiff can perform, he is not disabled. Tr. 26–28. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

**DISCUSSION**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000). Plaintiff contends that the ALJ harmfully erred by (**1**) improperly assessing the medical evidence and (**2**) improperly assessing plaintiff's testimony. The Court finds the ALJ failed to cite specific and legitimate reasons for rejecting the examining doctors' opinions, failed to cite a germane reason for rejecting case manager Ms. Grillo's testimony, and failed to cite specific, clear and convincing reasons for rejecting plaintiff's testimony. The ALJ's decision is not supported by substantial evidence or a proper application of the law and is therefore reversed and remanded for an immediate award of benefits.

**1. Assessment of Medical Evidence**

Plaintiff contends the ALJ gave undue weight to the opinions of non-examining state agency psychologists John Gilbert, Ph.D., and Jan Lewis, Ph.D., while discounting the opinions of examining psychologists Brendon Scholtz, Ph.D., and Geordie Knapp, Psy.D., as well as the lay opinions of Ms. Grillo and Carol Sherwood, M.S.W., the case managers who have for years addressed plaintiff's mental-health concerns. The Court agrees except with respect to the handling of Ms. Sherwood's lay opinion.

As a general rule for claims filed before March 2017, as this one was, more weight should be given to the opinions of treating and examining doctors than to the opinions of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R.

§ 404.1527(c)(2); SSR 96-2p. "The opinion of a non-examining doctor cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician." *Lester*, 81 F.3d at 831. When a non-examining physician relies on the same clinical findings as an examining physician but differs only in his or her conclusions, the conclusions of the non-examining physician are not substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). An ALJ may reject the controverted opinions of examining physicians such as Dr. Scholtz and Dr. Knapp by citing specific and legitimate reasons. *Lester*, 81 F.3d at 830. The ALJ may discount the opinions of "other sources," such as case managers Ms. Grillo and Ms. Sherwood, by citing specific and germane reasons supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### a. Examining Psychologist Dr. Scholtz

In January 2015, Dr. Scholtz performed a psychological evaluation of plaintiff and diagnosed dysthymic disorder and anxiety disorder. Tr. 419–24. In addition to conducting an hour-long clinical interview of plaintiff, Dr. Scholtz reviewed the SSA/DDDS referral for a consultative evaluation, Downtown Emergency Service Center ("DESC") progress notes, a June 2013 psychological evaluation by W. Dees, Psy.D., and a March 2014 SSA function report. Tr. 420. Plaintiff's mental status examination ("MSE") results were unremarkable. Tr. 421–22. Dr. Scholtz found that plaintiff's self-reports had "adequate veracity and therefore can be used as a representation of true level of functioning." Tr. 423. Dr. Scholtz opined plaintiff would have little or no trouble dealing with simple or complex instructions or decisions. *Id.* Nonetheless, Dr. Scholtz concluded "[f]rom a psychological perspective, the Examinee appears unable to obtain and maintain full time employme[n]t based on the severity of his psychological distress." *Id.* This was so because plaintiff appeared to be experiencing a moderate amount to chronic

psychological distress due to mood symptoms that remained despite a stable medication regimen and struggles to remain clean and sober. *Id.* "From a psychological perspective, the Examinee is likely unable to sustain and persist for a normal workweek." *Id.* Plaintiff could, however, engage in part-time employment with minor coaching and support. *Id.* The ALJ found:

> Dr. Scholtz's opinion that the claimant could not work is given little weight in light of the mental status examination, but his comments about a restriction to simple, repetitive tasks and some more complicated tasks are accepted as consistent with his mental status examinations.

Tr. 25. That is, the ALJ rejected Dr. Scholtz's observations that plaintiff suffered from psychological distress from dysthymic and anxiety disorders that precluded full-time work and rendered him unable to persist for a normal workweek because plaintiff's mental status examination was normal. This was not a specific and legitimate reason for discounting Dr. Scholtz's examining opinion.

The ALJ neither explained nor supported his conclusion that an unremarkable mental status examination demonstrates that plaintiff does not suffer from mental symptoms that interfere with his capacity to sustain and persist for a normal, full-time workweek. "[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (*quoting Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999), and citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (citations, quotation marks, and text alterations omitted). Dr. Scholtz opined that his examination and review of the medical record demonstrated that plaintiff could sustain part-time, but not full-time, work.

Tr. 423. Dr. Scholtz's conclusion is supported by the examining opinion of Dr. Knapp, the testimony of Ms. Grillo, the opinion of Ms. Sherwood, and plaintiff's testimony—which refer to panic attacks, anxiety, and suicidal ideation interfering with plaintiff's ability to sustain and persist in a normal workweek. Tr. 82–110, 432–36, 520. In contrast, the ALJ's conclusion that unremarkable MSE results equate with an ability to obtain and maintain full-time employment is supported in the medical record only by the ALJ's presumption and the opinions of non-examining psychologists that cannot alone constitute substantial evidence. Moreover, in the 2013 ALJ decision, plaintiff was found to have been disabled for a closed period despite his unremarkable mental status exams. *See* Tr. 129–33.

The ALJ's rejection of Dr. Scholtz's opinion with respect to plaintiff's ability to sustain and persist in a full-time workweek without interference from psychological symptoms is not supported by substantial evidence or by a proper application of the law.

### b. Examining Psychologist Dr. Knapp

In February 2015, Dr. Knapp performed a Department of Social and Health Services ("DSHS") psychological evaluation and diagnosed chronic PTSD, schizoid personality disorder, panic disorder without agoraphobia, and major depressive disorder, recurrent, severe without psychotic features. Tr. 432–36. In addition to examining plaintiff, Dr. Knapp reviewed social service case notes from January 2015 and a February 2012 psychological evaluation by James Czysz, Psy.D. Dr. Knapp opined that several mental health symptoms affect plaintiff's ability to work: re-experiencing nightmares, flashbacks, and intrusive recollections of being abused by his adopted father that cause intense anxiety and have impaired his relationships socially and at work; avoidance of others and of discussing past abuse; increased arousal; panic attacks; depressed mood; and anhedonia. Tr. 433. Dr. Knapp assessed severe limitations in plaintiff's

ability to communicate and perform effectively in a work setting and to complete a normal work day and workweek without interruptions from psychologically based symptoms; and assessed marked restrictions with respect to asking simple questions or requesting assistance and setting realistic goals and planning independently. Tr. 434. Dr. Knapp opined that plaintiff's memory, fund of knowledge, concentration, and abstract thought were not within normal limits. Tr. 435. The ALJ found:

> Dr. Knapp's opinion is only given limited weight because it was based on a snapshot of the claimant's functioning during a one-time examination and is not consistent with other mental status examinations of record that were normal.

Tr. 25. That is, the ALJ discounted Dr. Knapp's opinion because (1) it was an examining opinion, and (2) the MSE administered by Dr. Knapp was not consistent with other mental status examinations. Neither was a specific and legitimate reason for rejecting Dr. Knapp's opinion about plaintiff's inability to complete a workday or workweek without interference from psychologically based symptoms.

First, the mere fact that Dr. Knapp provided an examining opinion is not a specific and legitimate reason to discredit his opinion. An examining opinion is by definition a one-time examination. Adopting the ALJ's reasoning would invalidate virtually all examining opinions. *See Smith v. Colvin*, 2015 WL 9023486, at *7 (N.D. Cal. Dec. 16, 2015). It is unreasonable to reject an examining opinion solely because it is an examining opinion, particularly here when the only doctor's opinions accepted with substantial weight were by non-examining psychologists.

Second, the inconsistency of the MSE administered by Dr. Knapp with other normal mental status examinations does not here constitute a specific and legitimate reason. No treating or examining mental health provider has suggested that plaintiff has ever failed to provide full effort in mental status examinations or that differing/normal mental status examinations

demonstrate that plaintiff's psychological symptoms no longer impede his capacity to work full-time. It is undisputed that plaintiff was found disabled for a closed period of more than four years because he met the requirements of a listing for a mental-health disorder, during which time he showed unremarkable mental status examination results yet debilitating psychological symptoms. *See* Tr. 130–33. It is an unreasonable inference to conclude that Dr. Knapp's conclusions are discredited because plaintiff performed sub-optimally in that MSE but within normal limits in others. For example, although Dr. Czysz made no comment on plaintiff's 2 of 3 memory recall score, Dr. Knapp deemed the same score to be below normal limits. *Compare* Tr. 428 *with* Tr. 435. In 2012, plaintiff was able to name two-term Washington Governor Gregoire; in 2015, Dr. Knapp deemed plaintiff's inability to name first-term Washington Governor Inslee to be below normal limits. *Id.* While a single sub-optimal MSE could reasonably suggest the waxing and waning of psychological symptoms, it does not reasonably suggest that consistently described psychological limitations had ceased to exist.

The ALJ's rejection of Dr. Scholtz's opinion with respect to plaintiff's ability to sustain and persist during a full-time workweek without interference from psychological symptoms is not supported by substantial evidence or a proper application of the law.

### c. Testimony of Case Manager Ms. Grillo

At the date of the hearing, Ms. Grillo, a chemical dependency supervisor at DESC, had been plaintiff's case manager for two years, was his representative payee, and saw plaintiff three to four times per month, meeting him both at her office and on regular home visits. Tr. 98–99, 107. Ms. Grillo noted that plaintiff has "chronic and persistent suicidal ideation," and that he "really struggles a lot with the world and being outside in the world . . . the anxiety is pretty, it's chronic, it's persistent." Tr. 100. On the day of the hearing, Ms. Grillo accompanied plaintiff on

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 8

the bus and observed that his hands were "a little shaky" and that he was "visibly anxious" while on the bus. Tr. 106. Ms. Grillo opined that plaintiff would have problems maintaining concentration and focus in the workplace because sounds and noises would interfere and his sense of being forced to go somewhere every day would be difficult for him. Tr. 101–02. Ms. Grillo testified that even if plaintiff were employed in a job that involved repetitive tasks and little to no interaction, he would still have problems doing such a job on a full-time basis because "having to go somewhere every day, get on the bus every day, still deal with the commute and even if he were working alone in an environment . . . would be really, really difficult for him for any sustained time." Tr. 102. She noted that plaintiff's depression and anxiety would interfere with his ability to focus for long periods of time in a workplace setting. Tr. 104. Ms. Grillo observed that plaintiff will write lists of topics for them to discuss during meetings and his anxiety increases if the discussion goes off topic. Tr. 100–01. Ms. Grillo testified that the successes in plaintiff's civility had to do with being in a highly structured environment, including being housed in semi-supported housing, having a clinical support specialist available to help with tasks such as grocery shopping or purchasing art supplies, and having a full support team. Tr. 107–08. The ALJ rejected Ms. Grillo's lay opinion:

> Much like Ms. Sherwood, Ms. Grillo did not offer her opinion i[n] specific quantifiable terms. Nevertheless, her opinion is not inconsistent with the residual functional capacity found in this decision.

Tr. 26. These reasons for rejecting Ms. Grillo's testimony—(1) Ms. Grillo's opinion was not couched in "specific quantifiable terms" and (2) it was consistent with the assessed RFC—were not specific and germane.

First, the ALJ does not explain how Ms. Grillo could have better "quantified" her testimony beyond that his symptoms of depression and anxiety would interfere with his ability to

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 9

concentrate and focus for a work day and a workweek and that his present success was due to his structured environment, supportive housing, and enhanced services. Ms. Grillo stated her opinion of plaintiff's capacity to work in specific, succinct terms. Second, Ms. Grillo's opinion that plaintiff could *not* perform repetitive tasks on a full-time basis even if the job had no social interaction is clearly *not* consistent with the assessed RFC, which provides that he could do simple, repetitive tasks on a full-time basis so long as there were certain social restrictions. *Compare* Tr. 22 *with* Tr. 102. Third, Ms. Grillo's opinion is consistent with the opinions of Drs. Scholtz and Knapp, and Ms. Sherwood, about plaintiff's inability to persist with and sustain a full-time job. Consistency among examining medical opinions is a reason to assign more weight to Ms. Grillo's lay opinion. *See* 20 C.F.R. § 404.1527(c)(4).

The ALJ's rejection of Ms. Grillo's testimony with respect to plaintiff's ability to sustain and persist during a full-time workweek without interference from psychological symptoms is not supported by substantial evidence or a proper application of the law

### d. Letter by Case Manager Ms. Sherwood

Ms. Sherwood was plaintiff's case manager from January 2014 to around July 2016. Tr. 387-418, 443–510. In July 2016, Ms. Sherwood opined:

> Franz is diagnosed with Major Depressive disorder, Recurrent, Severe, and Alcohol Dependence, Moderate. Franz's Major Depressive Disorder affects his cognitive ability to focus and understand instructions. In addition, Franz experiences panic attacks and high anxiety. Franz isolates socially and has difficulty being around people.

Tr. 520. The ALJ discounted Ms. Sherwood's lay opinion:

> Ms. Sherwood did not offer limitations in quantifiable terms, so the degree of "difficulty" she believed the claimant had cannot be assessed. Absent specific quantifiable limitations, her opinion is not inconsistent with residual functional capacity found in this decision.

Tr. 26. Viewed in isolation, these reasons for rejecting Ms. Sherwood's lay opinion are specific and germane.

Although Ms. Sherwood referred to plaintiff's depression and alcohol dependence affecting his ability to focus and understand instructions, to panic attacks and high anxiety, and to plaintiff isolating himself and difficulty around people, she did not specify the degree to which such conditions impacted plaintiff's ability to complete a full-time workday or workweek. Without indicating any degree of severity, Ms. Sherwood's opinion cannot be viewed as presumptively inconsistent with the assessed RFC.

The ALJ's rejection of Ms. Sherwood's opinion with respect to plaintiff's ability to persist and sustain during a full-time workweek without interference from psychological symptoms is supported by substantial evidence and was not an improper application of the law. Nonetheless, because Ms. Sherwood confirmed psychological diagnoses and symptoms that *also* are consistent with the opinions of examining Drs. Scholtz and Knapp, as well as with Ms. Grillo's testimony and the balance of the medical record, Ms. Sherwood's opinion informs the Court's ultimate conclusion to reverse and remand.

### e. Non-Examining Psychologists Dr. Gilbert and Dr. Lewis

In March 2014, Dr. Gilbert reviewed the record and found plaintiff to be moderately limited in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public. Tr. 148–51. Dr. Gilbert also opined that plaintiff would be capable of simple, repetitive work with occasional lapses in concentration as work becomes more complex and would do best with working away from the general public. Tr. 150–51. In February 2015, Dr. Lewis also reviewed the record and rendered an opinion that agreed with Dr. Gilbert's opinion in many respects. Tr. 161–65. However, Dr.

Lewis concluded that plaintiff had no limitation in the ability to carry out detailed instructions; had moderate limitations in the abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 163–64. Dr. Lewis also opined that plaintiff is capable of maintaining adequate attendance and concentration, persistence, and pace for simple and repetitive tasks and any familiar, complex tasks; and could accept supervision, was isolative with limits in social function, and was best in a small group setting with independent work away from the general public. Tr. 164.

The ALJ assigned significant weight to Dr. Gilbert's opinion:

> [Dr. Gilbert] reviewed the medical evidence of record and his opinion is consistent with that record. The undersigned finds that the claimant has slightly more restrictive social limitations based on evidence received at the hearing level such as the claimant's testimony.

Tr. 24. Similarly, the ALJ assigned significant weight to Dr. Lewis's opinion because "he reviewed the medical evidence of record and his opinion is consistent with that record." Tr. 26. The ALJ provided no explanation for why Dr. Gilbert's and Dr. Lewis's opinions are consistent with the record. The ALJ's assessment therefore is not supported by substantial evidence and is an improper application of the law.

"The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1987). The ALJ offered no credible reasons for relying on the non-examining opinions of Drs. Gilbert and Lewis while rejecting the opinions of the examining psychologists Drs. Scholtz and Knapp. To the extent the ALJ implied that Drs. Gilbert and Lewis

examined the existing record more closely or thoroughly, such an implication is not borne out by a review of their opinions and the medical record. Non-examining Drs. Gilbert and Lewis reviewed the same clinical indicators as Drs. Scholtz and Knapp and the medical providers at DESC, yet only the non-examining psychologists concluded that plaintiff could work full-time without interference from psychologically based symptoms. Where such conclusions by non-examining psychologists are contradicted, as here, by the opinions of examining psychologists and the balance of the medical record, such conclusions alone cannot constitute substantial evidence. *See Orn*, 495 F.3d at 632.

The ALJ failed to support his reliance on the opinions of non-examining psychologists with substantial evidence and misapplied the law.

**2. Assessment of Plaintiff's Testimony**

Plaintiff contends that the ALJ improperly rejected plaintiff's testimony. The Court agrees.

Once there is a medically determinable impairment that could reasonably be expected to cause a claimant's symptoms, specific, clear and convincing reasons are needed to reject a claimant's testimony if there is no affirmative evidence of malingering. *Lester*, 81 F.3d at 834. The ALJ rejected the severity of plaintiff's psychologically based symptoms for four reasons: (1) treatment records from fall and winter 2013 indicate that he was very interested in work but that interest slackened once he received SSI/Disability Insurance benefits, suggesting an element of secondary gain in obtaining benefits by avoiding work; (2) in February 2014, plaintiff indicated that he had been doing well and would be amenable to seeing his therapist only once a month, suggesting that his symptoms had resolved as had been discussed in the earlier 2013 ALJ decision and is demonstrated by the balance of the medical record; (3) plaintiff's credibility was

undermined by his desire to work and activities such as reading, using the internet, shopping, walking, cooking, and painting; and (4) the medical records suggested an activity level commensurate with the assessed RFC. Tr. 23–24. These reasons do not constitute clear and convincing reasons and are based on the ALJ's erroneous assessment of the medical evidence.

The ALJ's first stated reason—that plaintiff appeared to lose interest in working once he learned of receiving benefits in the fall of 2013—neither undermines plaintiff's testimony about his psychological symptoms nor suggests that plaintiff is capable of sustaining work full-time. On November 13, 2013, treatment notes indicate that plaintiff had been awarded benefits. Tr. 380. On November 18, treatment notes report that plaintiff was "very interested in work." Tr. 381. On November 26, plaintiff "was considering quitting the DESC employment program" and was frustrated. Tr. 382–83. On December 10, plaintiff was "holding off on employment at this time." Tr. 383. On January 2, 2014, pre-employment counselor Jesse Torgerson noted that plaintiff's chemical dependency counselor "speculate[d]" that plaintiff's recent award of benefits was a reason plaintiff was less motivated to find work than he had been in the past. Tr. 384. Nonetheless, on January 6, plaintiff noted that he had been working with the employment team for years but never found employment and that he believed he would be ready to look for jobs again later in the year. Tr. 90, 385–86. Consistent with plaintiff's intentions to begin looking for work again, plaintiff began looking for a job at the airport in April 2014. Tr. 395. The record is replete with references to plaintiff's desire to work or attempts to work. Tr. 411, 420, 482, 485, 487, 494, 495, 500, 505. And there is no dispute that before and after plaintiff received benefits, plaintiff's attempts to find work were unsuccessful.

Plaintiff's momentary lapses in his motivation to unsuccessfully seek employment have no bearing on whether he has the capacity to work full-time without interference from

psychologically based symptoms. No treating or examining medical provider suggested plaintiff exaggerated his symptoms or has been anything other than forthright, even when he, during the holiday season, was less than enthusiastic about his unfruitful attempts to seek employment. No one disputes that plaintiff *wants* to find a job and that he has the capacity to work *part-time*. At the hearing, plaintiff testified that he could do a job in which he did not have to interact with people. Tr. 91. But he also testified that he suffered panic attacks daily that lasted for fifteen minutes a time. Tr. 90. Examining psychologist Dr. Scholtz noted that "Examinee reports that he would like to work and thinks that he would be able to work if he could find a job that would accommodate him." Tr. 421. But Dr. Scholtz also opined that plaintiff "is unable to sustain and persist for a normal workweek" due to the severity of his psychological distress. Tr. 423. Plaintiff's admitted lack enthusiasm for several months to seek employment is not a clear and convincing reason to suggest he exaggerated or misstated his symptoms.

The ALJ's second through fourth stated reasons—February 2014 notes suggested the resolution of any psychological symptoms that would impede working full-time and later records show this to be true; certain activities suggested higher functionality; and the medical records supported the assessed RFC—are not clear and convincing because they based on a selective interpretation of the medical record and contradict the conclusion by examining Drs. Scholtz and Gilbert, and of case manager Ms. Grillo, that plaintiff's ability to work full-time is impeded by his psychological symptoms. Although "[i]t is an error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," that is precisely what the ALJ did here when determining that February 2014 notes were proof positive that plaintiff was no longer debilitated by psychological symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). With mental health issues, "[c]ycles of improvement and debilitating symptoms are a common

occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id*. The record shows that there were times after February 2014 when he was doing worse with respect to depression, auditory hallucinations, suicidal ideation, and anxiety. *See, e.g.*, Tr. 23, 450, 453, 456, 500, 504. As discussed earlier, the ALJ's citation to normal mental status examinations and times in which plaintiff was doing better rather than worse, *see* Tr. 23–24, provide little insight into the determinative question of whether plaintiff's psychological symptoms continued to impede his ability to work full-time. Plaintiff's *desire* to work does not mean he has the *capacity* to work, and none of the activities cited by the ALJ to discredit plaintiff—reading, using the internet, shopping, walking, cooking, and painting—are performed at a level consistent with full-time work activity. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014). And, as also discussed earlier, the ALJ improperly rejected the opinions of examining psychologists and a treating social worker in order to adopt the conclusions of non-examining psychologists. Although the Commissioner invites the Court to view the medical record in the light most favorable to the ALJ's interpretation, once the opinions of the examining doctors and Ms. Grillo are properly considered, the ALJ's conclusions regarding plaintiff's testimony are unreasonable.

The ALJ failed to cite substantial evidence to discredit plaintiff's testimony and misapplied the law.

### 3. Remand for an Immediate Award of Benefits

Plaintiff contends that this case should be remanded for an immediate award of benefits rather than for further administrative proceedings. The Court agrees.

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 16

"If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). A remand for an immediate award of benefits is appropriate, however, if three requirements are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1019.

All three *Garrison* requirements are met here. First, the record is fully developed and contains years of detailed treatment notes from DESC case workers and mental-health providers and two examining medical sources who, consistent with the medical record, conclude that plaintiff's mental impairments prevent him from sustaining and persisting in full-time employment. Second, the ALJ failed to provide legally sufficient reasons for rejecting the examining opinions of Drs. Scholtz and Knapp, lay testimony by Ms. Grillo, and plaintiff's testimony. Third, if the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled because his mental limitations prevent him from sustaining and persisting in full-time employment. The Court is unpersuaded by the Commissioner's suggestion that this case should be remanded for further proceedings so that the ALJ may comb the existing record for unmentioned testimonial inconsistencies that might conceivably contradict the opinions of medical providers who actually examined or treated plaintiff, or allow the Commissioner to introduce questions about plaintiff's sobriety that the ALJ never addressed. "[A]llowing the ALJ to have a mulligan" does not qualify as a useful purpose for remanding for further administrative proceedings. *Garrison*, 759 F.3d at 1022.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for an immediate award of benefits.

DATED this 4th day of September, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 18